# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

RONALD LARKINS,

                               Petitioner,

     v.                              9:17-CV-345
                                              (BKS/ATB)

DALE ARTUS, Superintendent

                               Respondent.

RONALD LARKINS, Petitioner, pro se
LISA E. FLEISCHMANN, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

     Petitioner, incarcerated at Attica Correctional Facility, filed this petition, pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction, dated September 28, 2011, after an Onondaga County Court jury found petitioner guilty of attempted robbery in the first degree.  (Dkt. No. 1, Petition ("Pet.") at 1).  Petitioner was sentenced to fourteen years imprisonment, followed by five years post-release supervision. (Dkt. No. 9, State Court Record ("SR") 94).  The Appellate Division considered petitioner's direct appeal, and affirmed his conviction on May 8, 2015. *People v. Larkins*, 128 A.D.3d 1436 (4th Dep't 2015).  The New York Court of Appeals denied leave to appeal on April 6, 2016.  *People v. Larkins*, 27 N.Y.3d 1001 (2016).

Prior to the perfection of his direct appeal, petitioner filed a pro se motion dated March 20, 2012 to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10. (SR 4). This motion was denied by the trial court on August 2, 2013. (SR 21-29). The Appellate Division, Fourth Department ("Appellate Division") denied petitioner leave to appeal this denial on December 13, 2013. (SR 32). On January 13, 2014, petitioner sought leave to appeal to the Court of Appeals, which dismissed the request "because the order sought to be appealed from is not appealable." (SR 39).

In his federal habeas corpus application filed on March 27, 2017, petitioner raises the following grounds for relief:

(1)    The trial court violated his Sixth Amendment right to self-representation.

(2)    The prosecutor engaged in misconduct by altering or "photoshopping" a surveillance video to falsely implicate the petitioner.

(3)    The prosecutor intentionally withheld exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

(Pet. ¶ 12).

Respondent filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. No. 8). Petitioner filed a reply. (Dkt. No. 14). For the following reasons, this court agrees with respondent and will recommend denial of the petition.

**DISCUSSION**

I.    **Relevant Facts**

    A.    **Attempted Hotel Robbery in Dewitt, New York**

On August 24, 2010, a man wearing a button-down dress shirt, tie, and sunglasses entered the Ramada Limited Hotel in DeWitt, New York and approached the front desk. (Dkt. No. 9-1 at 355, Trial Transcript ("TT.") 209[1]).  After inquiring whether there was a room available, the man pointed a gun at the hotel desk clerk and demanded money. (*Id*.)  The desk clerk immediately turned and fled down the hall. (TT. 210).  The would-be robber ran to the hotel parking lot and drove away in what a witness described as a brown or tan car with a sunroof. (TT. 230-232).

After the desk clerk called 911, local police issued a "Be On the Lookout" ("BOLO") alert for the individual and the car. (TT. 282).  Approximately twenty-five minutes later, an individual matching the same description robbed the Best Western hotel in Weedsport, New York.  (TT. 283).  Shortly thereafter, a toll collector at the New York State Thruway's Weedsport interchange, who had heard the BOLO, observed a brown or tan Lexus automobile with a license plate beginning with "EWF" enter the Thruway, traveling westbound. (TT. 284).

A New York State trooper had set up an observation point near the Weedsport Interchange, and heard the toll collector's report. (*Id*.)  A short time later, he pulled over petitioner, who was driving westbound on the Thruway, in a brownish tan Lexus

---

[1] The transcripts for petitioner's arraignment, pre-trial motions, trial, and sentencing are all set forth at Dkt. No. 9-1.  This Report-Recommendation will include citations to both the CM/ECF pagination and the original transcript pagination where appropriate for easier reference.

automobile with the license plate EWF 3105. (TT. 270-71, 274).  Petitioner was wearing sunglasses and a green button down dress shirt, and he had $225 in cash in his pants pocket. (TT. 310).  During a search of petitioner's car, the New York State police recovered a loaded handgun. (TT. 285).  Petitioner was taken into custody in connection with the attempted robbery in DeWitt and the robbery in Weedsport. (TT. 309).

### B.    Pre-Trial Requests for New Attorney

On December 9, 2010, an Onondaga County grand jury indicted petitioner for attempted robbery in the first degree, for the incident at the Ramada Limited in DeWitt.[2] (SR 96).  On December 22, 2010, petitioner appeared with his court-appointed attorney in Onondaga County court, before Honorable Anthony F. Aloi, and entered a Not Guilty plea. (Dkt. No. 9-1 at 6; Arraignment Transcript ("AT") at 2).  During this appearance, petitioner stated that he believed that he was being denied his "federal right to effective counsel" because he had not spoken to his attorney until the day before. (Dkt. No. 9-1 at 9; AT at 4).  Judge Aloi asked whether petitioner was requesting new counsel, and petitioner replied, "Yes, sir." (*Id*.)  Judge Aloi then assigned petitioner a new attorney, Eric Jeschke, whom the judge described as "a very experienced criminal attorney." (Dkt. No. 9-1, at 10; AT at 5).

On March 9, 2011, petitioner wrote to Judge Aloi, and requested replacement legal counsel, because Attorney Jeschke had failed to provide him with requested

---

[2] The Weedsport hotel robbery was the subject of a separate court proceeding, because it occurred in Cayuga County.  This habeas petition is limited to petitioner's conviction in Onondaga County.

documents, including a copy of his indictment. (SR 38). Petitioner stated that he required appointed counsel because "I cannot afford to pay for an attorney and lack the legal expertise to go to trial pro se." (SR 39). At a court appearance on April 12, 2011, Judge Aloi denied this request for new counsel, and encouraged petitioner to cooperate with his attorney. (Dkt. No. 9-1, at 27-29; April 12, 2011 Transcript at 5-7).

On May 5, 2011, petitioner appeared in court with Attorney Jeschke for a *Wade* hearing.[3] (Dkt. No. 9-1, at 1; *Wade* Hearing Transcript ("WHT") at 1). During the hearing, petitioner's counsel argued that the hotel desk clerk should not be allowed to make an in-court identification of petitioner as the man who attempted to rob her. (Dkt. No. 9-1, at 48; WHT at 18). This motion was denied. (*Id.*) At the close of the hearing, petitioner addressed the court, and repeated his complaints about his first court-appointed attorney. (Dkt. No. 9-1, at 62; WHT at 32). Petitioner then requested that the court replace his current counsel, stating:

> Petitioner: I made it known to you, sir, I was not satisfied with the representation of my counsel on the grounds that there are motions that I needed him to put in as far as dismissing the indictment.
>
> He did not put in one. I said that I didn't get an opportunity to testify [at the grand jury]. We had hearings for the omnibus motion. I asked him to put in the Bill of Particulars. I asked him for factual information that the DA will use in trial. We are asking what they will use in trial. You know, their particular case that they will use that was not presented in the omnibus motion.

---

[3] A hearing pursuant to *United States v. Wade*, 388 U.S. 218, 232 (1967) assesses whether pretrial identification procedures were unduly suggestive and subject to suppression.

> And once again, I must say that my 6th and 14th
> Amendment of the Constitution allows me
> effective assistance of counsel.  Once again I want to say,
> I'm not satisfied with representation.  I'm not saying he's a
> bad attorney or good attorney.  I don't know.  I'm saying as
> far as liberty is concerned he has not been effective for me.
> Only told me that everything I ask him is frivolous.  It's his
> opinion.  He is entitled to it, I believe.

(Dkt. No. 9-1, at 62-63; WHT at 32-33).  Judge Aloi denied this request for

appointment of new counsel. (Dkt. No. 9-1, at 64-65; WHT at 34-35).

On September 19, 2011, petitioner appeared with his counsel to oppose a

prosecution motion to introduce testimony at trial from a witness of the Weedsport

hotel robbery. (Dkt. No. 9-1, at 130, 9/19/11 Motion Hearing Transcript ("MHT") at 1).

After the court granted the prosecution limited use of that testimony, and declared the

case ready for trial on September 26, 2011, petitioner again raised his concerns about

legal counsel:

> Petitioner:    You have given me the opportunity to proceed pro se.  I have
> been asking for new counsel and it hasn't been provided.  I
> have no other alternative but to proceed pro se because I feel
> the counsel that I have now, that I would be coming to court
> with, counsel is blind, deaf, and dumb, sir, if I was to proceed
> with Mr. Jeschke.  In any event, I would like to proceed pro
> se, since you neglected to offer me different counsel.

> The Court:    All right.  And Mr. Jeschke is the second assigned attorney
> that I have provided to you.  And his demonstration of
> representing you during the course of this case has been
> nothing but professional.  And you know, I am not going to
> respond to those derogatory remarks made about a highly
> respected attorney, all right?  You're the one that is here in
> cuffs.

6

Petitioner:     That is correct.

The Court:     To make those remarks like that, to me, knowing Mr. Jeschke and the way he represents clients, that falls on deaf ears.

Petitioner:     Correct.

The Court:     Now if you want to proceed pro se now - - in Cayuga County, how did that work out?

Petitioner:     Your Honor? You said, you know, this is the second attorney you assigned to me since you have assigned Mr. Jeschke to me. [sic] Since the second court date that I have had here, I have been asking for new counsel. So this isn't something that just came about. I talked to Mr. Jeschke. I know him from nothing other than talking to me. I didn't know about his other cases or in front of any other courts. I can only speak about myself.

The Court:     We have had hearings in this case. And no, I am not going to give you a new attorney. You're going to trial with Mr. Jeschke. Now you say you want to proceed pro se?

Petitioner:     That is correct, sir.

The Court:     What's your education, how far in school have you gone?

Petitioner:     I have no knowledge of the law whatsoever, sir, except for coming to court and being represented by a lawyer in court. I have an extensive criminal history. That doesn't mean that, you know, I have any knowledge of the law – telling you right here, I have no knowledge of the law. I feel safer representing myself, because I have talked to Mr. Jeschke, as I said, and I have come across with no kind - - he has given me no defense for my case. He has talked about a lot of the things other than my case with me, but nothing about defending me on these charges here, which is the only thing that concerns is these charges here, sir. I have no knowledge of the law whatsoever but I still feel safer and better representing myself than having Mr. Jeschke represent me . . . .

7

The Court:   . . . But you say to me that you don't have any knowledge of the criminal law.  You may not like your lawyer but you said you have no knowledge of the criminal law.  And if this case were to go to trial and you were representing yourself, you would be held to the same standards as any other lawyer in terms of questions, evidentiary rulings, and all of that.  Do you understand that?

Petitioner:   Thank you very much.  Yes, sir.

The Court:   What I am saying to you is you're going to be held to the same standards that I would hold any lawyer in terms of evidentiary rulings, procedures, and all of that.  And you say to me that you don't know anything about the law, other than the fact that you have a criminal record, is that correct?

Petitioner:   That is very correct, Your Honor.

The Court:   I'm not going to allow you to represent yourself.  Mr. Jeschke is going to represent you.  I think you have an absolute right to represent yourself, but I'm not going to - - I'm not going to grant you that right.  You said yourself you don't know anything about the criminal law.  You don't know anything about the evidence.  And I think, quite frankly, even though you have a right to represent yourself, you have got - - I don't think in my opinion, that based upon what you said here other than, you know, you don't like Mr. Jeschke, I am not going to allow you to represent yourself.  Mr. Jeschke is going to be your attorney.  You can cooperate with him.  And this case is going to move forward.  All right.  9/26 at 10:45.

(Dkt. No. 9-1, at 139-142, MHT at 10-13).

## C.    Trial and Sentencing

Judge Aloi presided over a three day jury trial that took place between September 26 and 28, 2011. (Dkt. No. 9-1, at 144-550, Trial Transcript ("TT.") 1-394).  The prosecution's evidence included the sworn testimony of the Ramada Limited Hotel desk

8

clerk, a witness who observed the perpetrator leaving the scene, and several of the police officers and state troopers involved in the investigation and petitioner's arrest. (TT. 207-317). The prosecution also introduced a surveillance video that showed the perpetrator entering the hotel lobby and confronting the desk clerk. (TT. 213-218). Defense counsel's cross examination of prosecution witnesses emphasized potential discrepancies between petitioner's appearance when he was apprehended and the eyewitness reports and surveillance video. (TT. 220-22, 246, 256, 304). The defense did not call any witnesses. (TT. 324-25).

The twelve person jury found petitioner guilty of all charges on September 28, 2011. (TT. 390). On December 2, 2011, Judge Aloi sentenced petitioner to a determinate sentence of fourteen years, plus a five year post-release supervision period. (SR. 94).

### D.    Post-Trial Motions and Appeals

Prior to sentencing, petitioner filed a pro se motion to set aside the jury verdict pursuant to N.Y. C.P.L. § 330. Petitioner argued that prosecutors failed to make a key piece of evidence, the hotel surveillance video, available to the defense prior to trial. (SR 14). Petitioner also argued that the video was "photoshopped" in order to make the perpetrator's clothing more closely resemble the clothing that petitioner was wearing when he was arrested, and that Judge Aloi had violated his constitutional rights to effective counsel and to proceed pro se. Judge Aloi denied the motion in its entirety. (Dkt. No. 9-1, at 546-47, December 2, 2011 Sentencing Transcript at 3-4).

On March 20, 2012, petitioner filed a pro se motion to vacate the jury verdict

pursuant to N.Y. CPL § 440. (SR 1-2). This motion raised the same *Brady* and prosecutorial misconduct allegation as his earlier 330.10 motion, as well as a claim of ineffective assistance of counsel at both the grand jury and trial stage. (SR 1). In a written decision dated August 2, 2013, Judge Aloi denied petitioner's motion in its entirety. (SR 21-29). Petitioner sought leave to appeal this decision, which was denied by the Appellate Division, Fourth Department on December 13, 2013. (SR 32). On January 13, 2014, petitioner sought leave to appeal to the Court of Appeals, which dismissed the request "because the [Appellate Division] order sought to be appealed from is not appealable." (SR 39).

Petitioner also filed a direct appeal of his conviction to the Appellate Division. In a brief filed by appointed appellate counsel, petitioner argued, among other issues, that the trial court violated his right to self-representation. (SR 40-86). Petitioner also filed a pro se supplemental brief, in which he argued that the prosecution committed misconduct when it "photoshopped" the hotel surveillance video to make the perpetrator's clothing look similar to the clothes that petitioner was wearing at the time of his arrest, and violated the *Brady* disclosure requirements when it failed to make the video available prior to trial. (SR 229-38).

The Appellate Division unanimously affirmed the trial court decision. *People v. Larkins*, 128 A.D.3d at 1436-37. The Appellate Division found that the trial court did not abuse its discretion in denying petitioner's request to proceed pro se, because the request was not clear and unequivocal. *Id.* at 1441. Although the Appellate Division did not specifically address petitioner's claims regarding the surveillance video, it

10

"reviewed [petitioner's] remaining contentions in his main and pro se supplemental briefs and conclude[d] that none warrant reversal or modification of the judgment." *Id*. at 1442. Petitioner sought leave to appeal, which was denied by the New York Court of Appeals. *People v. Larkins*, 27 N.Y.3d 1001 (2016).

## II.    Generally Applicable Law

### A.    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original). A state court decision

involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U,S 37, 132 S. Ct. 2148, 2155 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1703 n.3 (2014).

## B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the

claim.  *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).  Petitioner has exhausted all three claims raised in his habeas petition.

## III.   <u>Right of Self-Representation</u>

### A.    **Legal Standards**

Under the Sixth Amendment to the Constitution, an accused is guaranteed the right to represent himself.  *See Faretta v. California*, 422 U.S. 806, 819-20 (1975).  The right to self-representation attaches only if it is asserted "clearly and unequivocally." *Id.* at 835; *Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994); *Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir. 1986).  Assuming that a defendant's waiver meets this standard and the request is made prior to the start of the trial, "'[t]he right of a defendant in a criminal case to act as his own lawyer is unqualified . . . .' " *Williams*, 44 F.3d at 99 (quoting *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965).

Even if a defendant unequivocally asserts the right to represent himself, the right may be waived through conduct indicating that the defendant is "vacillating on the

issue or has abandoned [his] request altogether." *Williams*, 44 F.3d at 100; *LaValle v. Artus*, No. 06-CV-2538, 2009 WL 3761995 at *4 (E.D.N.Y. Nov. 5, 2009), *aff'd*, 403 F. App'x 607, 609 (2d Cir. 2010); *Neish v. Reynolds*, No. 97-CV-1901, 2000 WL 33743383, at *2 (N.D.N.Y. Nov. 30, 2000) (Sharpe, M.J.).  Therefore, "[a] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) (quoting *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir.1982)).

   **B.   Application**

   Although petitioner repeatedly raised concerns  about the  effectiveness of his  appointed legal counsel with the trial court, he did not request to represent himself until September 19, 2011, approximately one week before his trial date.  In light of Judge Aloi's refusal to appoint substitute counsel, petitioner informed the court that he had "no other alternative but to proceed pro se because I feel the counsel that I have now, that I would be coming to court with, counsel is blind, deaf, and dumb." (Dkt. No. 9-1, at 139, MHT at 10).  The Appellate Division concluded that petitioner's request to represent himself was "not clear and unequivocal," because it was one of several attempts to convince the court to appoint new counsel.  *People v. Larkins*, 128 A.D.3d at 1441.

   There is no "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).  Rather, the determination of whether a defendant has knowingly and intelligently waived his rights to counsel depends on "a range of case specific factors, including the defendant's

education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.*  In this case, Judge Aloi questioned petitioner about his education and knowledge of the law, and expressly considered the fact that the trial was scheduled to commence in one week. (Dkt. No. 9-1, at 140-42, MHT at 11-13).  The trial judge's questions echoed petitioner's prior statements about his need for an attorney.  In his March 9, 2011 letter requesting replacement counsel, petitioner had advised the court that he required the assistance of an attorney because "he lacked the legal expertise to go to trial pro se." (SR 128-29).  When questioned by Judge Aloi, petitioner again advised the court that he had no legal knowledge or training, and repeated his concerns about the effectiveness of Attorney Jeschke's legal strategy. (Dkt. No. 9-1, at 140-41, MHT at 11-12).

The Appellate Division considered these circumstances when it found that petitioner's request to proceed pro se was not unequivocal.  "Equivocation, which sometimes refers only to speech, is broader in the context of the Sixth Amendment, and takes into account conduct as well as other expressions of intent." *Williams*, 44 F.3d at 100*; see also Rush v. Lempke*, 500 F. App'x 12, 14 (2d Cir. 2012) (". . . we find that the Appellate Division's rejection of [petitioner's] first self-representation claim was eminently reasonable.  Petitioner's initial statement that he would proceed pro se "if [he had] to" was not unequivocal, but part of a transparent effort to obtain an adjournment and substitution of counsel.").  "A request to proceed pro se is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel." *Johnstone,* 808 F.2d at 216, n.2.  However, the context is important

in determining whether a criminal defendant clearly invokes his right to self-representation.  *See United States v. Abdur Rahim*, 512 Fed. App'x 1,4 (2d Cir. 2013) (request to proceed pro se was not unequivocal where defendant's prior motions for new counsel, coupled with repeated complaints about his attorney, demonstrated a desire to have the court appoint new counsel, rather than a desire to represent himself); *see also LaValle v. Artus*, 403 F. App'x 607, 609 (2d Cir. 2010) (request to proceed pro se at trial was not unequivocal where defendant expressed dissatisfaction with current legal strategy, stated that he wished to remain represented by counsel, and that self-representation was his "last option.").  Accordingly, the Appellate Division's determination, that petitioner's request for self-representation was not clear and unequivocal, was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Petitioner's habeas claim regarding his right to self-representation should therefore be dismissed.

## IV.    <u>Prosecutorial Misconduct - Alteration of Evidence</u>

### A.    **Legal Standard**

The use of "known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  A conviction that is obtained through the use of false evidence that is known by the prosecution to be false, is invalid under the Fourteenth Amendment. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  The same is true when the State, although not soliciting the false evidence, allows it to go uncorrected when it appears.  *Id.*

16

## B.    Application

The Appellate Division rejected petitioner's contention that the prosecution had altered or photoshopped the hotel surveillance video, but the appeals court did not explain its reasoning. *People v. Larkins*, 128 A.D.3d at 1442 ( "We have reviewed defendant's remaining contentions in his main and pro se supplemental briefs and conclude that none warrant reversal or modification of the judgment."). Notwithstanding the summary nature of the Appellate Division's decision on this issue, it must be accorded AEDPA deference. *Smith v. Artus*, 610 F. App'x 23, 26 n.1 (2d Cir. 2015) (quoting *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1096 (2013)); *see also Harrington v. Richter*, 562 U.S. 86, 99-100 (2011) (28 U.S.C. § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" for purposes of AEDPA deference).

In order to meet his burden to substantiate his prosecutorial misconduct claim, petitioner must show not only that the prosecutor knowingly used false evidence to convict him, but also that the use of such evidence likely affected the outcome of his trial. *Parker v. Smith*, 858 F. Supp.2d 229, 245 (N.D.N.Y. 2012). Petitioner has clearly failed to do so. Petitioner contends that the hotel surveillance video was altered to show an individual wearing a green shirt, in order to falsely implicate him for the crime. (Pet. at 18). He further contends that he was provided a still frame printed from the original surveillance video which showed the perpetrator actually wore a black shirt. (*Id.*) This still frame does not appear in the record of this proceeding, and petitioner does not appear to have ever provided it to any of the state courts that considered his

17

claim.[4]

The allegedly doctored surveillance video itself is not part of the record in this proceeding either.  However, petitioner's counsel described the video shown at trial as part of his summation challenging the testimony of the hotel desk clerk.  Although petitioner has contended that the video was doctored to show a perpetrator wearing a green shirt, his attorney argued the exact opposite at trial:

> She also talked about, you know, and on direct exam, yes, it was a green shirt.  It was a green shirt.  That's because I think she learned that the shirt Mr. Larkins had on at a later time was green.  Okay.  So now all of a sudden, it's a dark shirt becomes a green shirt.  And you may be able to tell, it's not a green shirt in the video.

(TT. 328) (emphasis supplied).  This court need not resolve the discrepancy between these two descriptions of the video's contents, but the conflict highlights the speculative nature of petitioner's prosecutorial misconduct claim.

Petitioner has not offered any new evidence in this habeas proceeding to support his claim that the prosecution altered the surveillance video.  Instead, he only asserts that "[n]o New York Court ever gave petitioner a chance to present evidence of [an] expert videographer to establish if the video was doctored or photoshopped." (Dkt. No. 14, at 6).  Given the speculative nature of this argument, the Appellate Division's rejection of petitioner's prosecutorial misconduct claim is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

---

[4] None of the state court decisions references this alleged still frame, and the Onondaga County District Attorney's office argued in its brief to the Appellate Division that petitioner had failed to provide the purported proof that the video was altered in any of motions to the trial court or in the state court record on appeal. (SR. 249).

## V.    _Brady v. Maryland_

### A.    Legal Standards

The prosecutor in a criminal case has a constitutional obligation to disclose material, exculpatory evidence to a defendant.  _Brady v. Maryland_, 373 U.S. 83 (1962).  Pursuant to _Brady_, the prosecutor must disclose favorable evidence to the accused "where such evidence is 'material' either to guilt or punishment.'" _United States v. Cacace_, 796 F.3d 176, 183 (2d Cir. 2015) (quoting _United States v. Coppa_, 276 F.3d 132, 139 (2d Cir. 2011)).  The good faith or bad faith of the prosecution is not relevant. _Kyles v. Whitley_, 514 U.S. 419, 434 (1995).  A _Brady_ violation occurs when (1) the prosecutor failed to disclose favorable evidence; and (2) the undisclosed evidence was "material." _United States v. Amiel_, 95 F.3d 135, 144 (2d Cir. 1996).  Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." _Fuentes v. Griffin_, 829 F.3d 233, 246 (2d Cir. 2016) (quoting _U.S. v. Bagley_, 473 U.S. 667, 682 (1985)).  A "reasonable probability" of a different result occurs when the nondisclosure "'undermines confidence in the outcome of the trial.'" _Id._ (quoting _Kyles v. Whitley_, 514 U.S. at 434). _See Banks v. Dretke_, 540 U.S. 668, 698 (2004) (materiality standard is met when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict).

### B.    Application

Petitioner contends that the prosecutor violated _Brady_ by failing to provide petitioner a copy of the surveillance video prior to its use at his trial.  The Appellate

Division's rejection of this argument was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Therefore, this claim for habeas relief should also be dismissed.

First, petitioner has failed to demonstrate that the surveillance video, which the prosecution used to show that petitioner committed the armed robbery, was exculpatory evidence subject to *Brady*. Presumably, petitioner relies upon the same theory as his prosecutorial misconduct claim, and argues that the original, undoctored video was exculpatory, before it was altered to depict an individual wearing clothing that matched those worn by petitioner at the time of his arrest. This court has already rejected that speculative argument as unsupported by any evidence in the record.

Moreover, even if the surveillance video was exculpatory evidence, petitioner has not shown that he was prejudiced by the alleged failure to produce it prior to trial. The Second Circuit has held that there may be some instances in which disclosure on the eve of, or during, trial would rise to the level of a constitutional violation if the disclosure came too late to enable the defendant to use it effectively in his own defense, "'particularly if it were to open the door to witnesses or documents requiring time to be marshaled and presented.'" *Lake v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001) (quoting *United States v. Cobb*, 271 F. Supp. 159, 163 (S.D.N.Y. 1967)). Even assuming that the material were *Brady* material, as long as the defendant has the material in time for its effective use, the state has not deprived the defendant of due process simply because it did not produce the evidence sooner. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). The record shows that petitioner's counsel relied

20

upon the surveillance video to challenge the recollection of several witnesses on cross-examination, by highlighting discrepancies between the video and their testimony. (TT. 220-22, 246, 256, 304).

Because the record shows that the prosecution produced the surveillance video in sufficient time for it to be used by the defense, this court finds that the Appellate Division's rejection of petitioner's claim was not contrary to *Brady*, and this claim for habeas relief should also be dismissed.[5]

   **WHEREFORE**, based on the findings above, it is

   **RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

   **RECOMMENDED**, that a certificate of appealability be **DENIED**.

   Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R.

---

[5] Petitioner also alleges a *Rosario* violation related to the prosecution's allegedly tardy production of the video at trial.  Under New York law, a prosecutor must turn over "*Rosario* material"  any "written or recorded statements . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony."  N.Y. Crim. Proc. Law § 240.45(1)(a); *People v. Rosario*, 9 N.Y.2d 286, 289, 213 N.Y.S.2d 448 (N.Y. 1961). Even if *Rosario* applied to the surveillance video, such claims are non-cognizable on federal habeas review.  *See Goston v. Rivera*, 462 F. Supp. 2d 383, 395 (W.D.N.Y. 2006) ("[T]o the extent that *Rosario* exceeds federal constitutional requirements, it defines state law, and the prosecutor's failure to turn over *Rosario* material is not cognizable on federal habeas review").

Civ. P. 72.

Dated:      March 22, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge