**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RONALD LARKINS,**

                               **Petitioner,**

v.                                                               **9:17-CV-345 (BKS/ATB)**

**DALE ARTUS,**

                               **Respondent.**
_____

**Appearances:**

Ronald Larkins
11-B-3910
Attica Correctional Facility
Box 149
Attica, NY 14011
Petitioner, pro se

James F. Gibbons
Hon. Barbara D. Underwood
Office of New York State Attorney General
28 Liberty Street, 14th Floor
New York, NY 10005
Attorney for Respondent

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Petitioner Ronald Larkins filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 claiming, *inter alia*, that his Sixth Amendment rights were violated when a New York State Supreme Court Justice denied his request to represent himself in his trial for attempted

robbery in the first degree. (Dkt. No. 1, Petition (Pet.) at 5, 16–17).[1] A response to the petition was filed by respondent on June 27, 2017, (Dkt. No. 8, Resp.) and Petitioner filed a traverse on August 14, 2017, (Dkt. No. 14). This matter was referred to United States Magistrate Judge Andrew T. Baxter who, on March 22, 2018, issued a Report-Recommendation recommending that the petition be denied and dismissed. (Dkt. No. 15). Petitioner filed an objection to the Report-Recommendation on April 11, 2018. (Dkt. No. 16). For the reasons set forth below the Report-Recommendation is rejected, and the habeas corpus petition is granted.

## II. BACKGROUND

Petitioner is in custody following his conviction by a jury for attempted robbery in the first degree, in violation of N.Y. Penal Law §§ 110.00 and 160.15[4], in connection with his attempt to rob a Ramada Inn in Dewitt, New York on August 24, 2010. *People v. Larkins*, 128 A.D.3d 1436, 1437 (2015), *lv. denied*, 27 N.Y.3d 1001 (2016). The evidence at trial included a video recording made by the hotel's security system, evidence that Petitioner stole property from a Best Western hotel about an hour after the attempted robbery at the Ramada Inn, and clothing and a handgun found by the New York State Police when they stopped Petitioner on the New York State Thruway approximately 90 minutes after the attempted robbery. *Id.*, at 1437–39.

### A. Petitioner's Requests for New Assigned Counsel

Petitioner appeared with assigned counsel at his arraignment on the attempted robbery charge on December 22, 2010. (Dkt. No. 9-1, at 7).[2] During that proceeding Petitioner addressed the court and complained that he did not have effective counsel, as required "under the 6th and 14th amendment of the United States Constitution," because he only met his assigned

---

[1] Petitioner also alleged prosecutorial misconduct and a violation of *Brady v. Maryland*, 373 U.S. 83 (1962).
[2] Petitioner was indicted for attempted robbery first degree by an Onondaga County grand jury on December 9, 2010. (Dkt. No. 9, State Record (SR) at 96-97). Petitioner was charged in a separate indictment with the Best Western robbery, which took place in a different county, Cayuga County.

attorney "yesterday," even though he had been "in jail since the 24th." (*Id.* at 9). The court granted his request for new assigned counsel and appointed Eric Jeschke, "a very experienced criminal attorney," to represent Petitioner. (*Id.* at 10).

On March 9, 2011, Petitioner wrote the court a letter complaining that he had "yet to receive" "the legal material" that he had requested from his attorney, and reported that he had written to the "Attorney Grievance Committee." (SR 128). Petitioner complained that his attorney "has not been truthful nor effective in his representation of me," and that he had written his attorney "asking him to let the court know of my desire" for new assigned counsel. (SR 128-129). Petitioner concluded his letter, seeking the court's relief "as I can not afford to pay for an attorney and lack the legal expertise to go to trial pro se." (SR 129).

On April 12, 2011, the court held a hearing to consider Petitioner's omnibus motion. (Dkt. No. 9-1, at 24). Petitioner's counsel sought a *Wade* hearing,[3] in light of a photo identification by the alleged victim, and indicated that he might also seek "a probable cause hearing, depending on what I see in the police reports." (*Id.* at 25).[4] After the court granted counsel's request for a *Wade* hearing, Petitioner asked the court for new counsel. (*Id.* at 28). The court noted that Petitioner's assigned attorney was "a well respected criminal attorney in this town," and asked "now what?" (*Id.*). Petitioner responded that his life "is on the line," and he wanted someone who "I feel is, you know, doing the best for me." (*Id.*). The court declined "to change lawyers at this point because your attorney has made the omnibus motion." (*Id.*). The court told Petitioner, "I'm not going to give you another attorney. You can hire another attorney if you want, but I'm not going to assign another lawyer to you. Get along with the lawyer that

---

[3] *See United States v. Wade*, 388 U.S. 218 (1967).
[4] Ultimately the court held both a *Wade* hearing and a hearing to determine whether there was probable cause for the stop and search. (Dkt. No. 9-1, at 125).

you have. You have to cooperate as well. So, no I'm not going to assign another lawyer." (*Id*., at 29).

On May 5, 2011, following the *Wade* hearing, Petitioner told the court that he was "not satisfied" with his representation. (*Id*., at 63). Petitioner complained that he was not given an opportunity to testify in the grand jury, that his counsel failed to make a motion to dismiss the indictment or seek a bill of particulars, and that counsel told Petitioner that "everything" Petitioner asked for "is frivolous." (*Id*.). After discussing the lack of merit of Petitioner's complaints regarding the grand jury, the court denied his request for new counsel: "Based on what you have said, I'm not going to relieve him." (*Id.*, at 64–65). When Petitioner then complained about counsel's failure to seek a bill of particulars, the court noted that, as a result of defense counsel's omnibus motion, defense counsel received "all of the police reports in the possession of the People that particularize very specifically the allegations in support of these matters," and that the comprehensive omnibus motion also led to the court's inspection of the grand jury minutes. (*Id*. at 66). The court further noted that "a request for a bill of particulars . . . [i]sn't necessarily determinative of the quality of your representation." (*Id*. at 66–67).

**B. Petitioner's Request to Proceed Pro Se**

One week before trial, on September 19, 2011, Petitioner appeared with his counsel to oppose a prosecution motion to introduce testimony at trial from a witness of the Weedsport robbery. (*Id*. at 132). After the court granted the prosecution limited use of that testimony, the court permitted the Petitioner to address the court and the record reflects the following colloquy:

> THE DEFENDANT: You have given me the opportunity to proceed pro se.[5] I have been asking for a new counsel and it hasn't been provided. I have no other alternative but to proceed pro se because I feel the counsel that I have now, that I would be coming

---

[5] Petitioner has repeatedly asserted that the court told him that he could pay for a private attorney or proceed pro se. (Pet., at 16; Dkt. No. 16 at 3). There is no evidence of this in the record on file.

4

to court with, counsel is blind, deaf and dumb, sir, if I was to proceed with Mr. Jeschke. In any event, I would like to proceed pro se, since you neglected to offer me different counsel.

THE COURT: All right. And Mr. Jeschke is the second assigned attorney that I have provided to you. And his demonstration of representing you during the course of this case has been nothing but professional. And you know, I am not going to respond to those derogatory remarks made about a highly well respected attorney, all right? You're the one that is here in cuffs.

THE DEFENDANT: That is correct.

THE COURT: To make those remarks like that, to me, knowing Mr. Jeschke and the way he represents clients, that falls on deaf ears.

THE DEFENDANT: Correct.

THE COURT: Now if you want to proceed pro se now – in Cayuga County, how did that work out?

THE DEFENDANT: Your Honor? You said, you know, this is the second attorney you assigned to me since you have assigned Mr. Jeschke to me. Since the second court date that I have had here, I have been asking for new counsel. So this isn't something that just came about. I talked to Mr. Jeschke. I know him from nothing other than talking to me. I didn't know about his other cases or in front of any other courts. I can only speak about myself.

THE COURT: We have had hearings in this case. And no, I am not going to give you a new attorney. You're going to trial with Mr. Jeschke. Now you say you want to proceed pro se?

THE DEFENDANT: That is correct, sir.

THE COURT: What's your education, how far in school have you gone?

THE DEFENDANT: I have no knowledge of the law whatsoever, sir, except for coming to court and being represented by a lawyer in court. I have an extensive criminal history. That doesn't mean that, you know, I have any knowledge of the law – telling you right here, I have no knowledge of the law. I feel safer representing myself, because I have talked to Mr. Jeschke, as I said, and I have

5

come across with no kind – he has given me no defense for my case. He has talked about a lot of the things other than my case with me, but nothing about defending me on these charges here, which is the only thing that concerns me is these charges here, sir. I have no knowledge of the law whatsoever but I still feel safer and better representing myself than having Mr. Jeschke represent me.

THE COURT: Now you have an extensive criminal record.

THE DEFENDANT: Yes, sir.

THE COURT: You have a prior robbery in '98. An attempted burglary in '87. An unlawful use of a motor vehicle in the second degree, I believe, in '89. But the robbery in '98, you were sentenced to eight years. And now, you were convicted of robbery in Cayuga County. This subsequent robbery we talked about, were you represented by an attorney in that case?

THE DEFENDANT: Very well, sir.

THE COURT: All right. And you were found guilty in that case, correct?

THE DEFENDANT: That's public knowledge.

THE COURT: Yes. And you're awaiting sentence there. But you say to me that you don't have any knowledge of the criminal law. You may not like your lawyer but you said you have no knowledge of the criminal law. And if this case were to go to trial and you were representing yourself, you would be held to the same standards as any other lawyer in terms of questions, evidentiary rulings, and all of that. Do you understand that?

THE DEFENDANT: Thank you very much. Yes, sir.

THE COURT: What I am saying to you is you're going to be held to the same standards that I would hold any lawyer in terms of evidentiary rulings, procedures, and all of that. And you say to me that you don't know anything about the law, other than the fact that you have got a criminal record, is that correct?

THE DEFENDANT: That is very correct, Your Honor.

THE COURT: I'm not going to allow you to represent yourself. Mr. Jeschke is going to represent you. I think you have an absolute right to represent yourself, but I'm not going to – I'm not

> going to grant you that right. You said yourself you don't know anything about the criminal law. You don't know anything about the evidence. And I think, quite frankly, even though you have a right to represent yourself, you have got – I don't think in my opinion, that based upon what you said here other than, you know, you don't like Mr. Jeschke, I am not going to allow you to represent yourself. Mr. Jeschke is going to be your attorney. You can cooperate with him. And this case is going to move forward. All right.

(*Id*. at 137–142).

**C. Petitioner's Post-Trial Briefing**

Petitioner went to trial with assigned counsel and was convicted by a jury. *Larkins*, 128 A.D.3d at 1437. Following his conviction, Petitioner filed a pro se motion to set aside the verdict under N.Y. Crim. P. 330.30. (SR 14; Dkt No. 9-1, at 546). Petitioner argued, *inter alia*, that the trial court's refusal to permit him to proceed pro se violated his rights under the Sixth Amendment. (SR 15; Dkt. No. 9-1, at 546). His attorney adopted the motion, and the trial court denied it. (Dkt. No. 9-1, at 546–47). Petitioner was sentenced to fourteen years of imprisonment, followed by five years of post-release supervision. (Dkt. No. 9, at 96).

**D. Petitioner's Appeal and the Appellate Division Ruling**

Petitioner filed an appeal from his conviction asserting, *inter alia*, that the trial court violated his Sixth Amendment rights by denying his unequivocal request to proceed pro se. (SR 58-63). In response, the State argued that the trial court "correctly determined that [Petitioner] did not have the requisite knowledge to represent himself during trial;" that the request was not unequivocal because it was made in the context of Petitioner's "claim expressing dissatisfaction with his attorney;" and that the record did not demonstrate that the Petitioner understood the risk of representing himself. (SR 210-211). The Appellate Division ruled as follows:

> Contrary to defendant's further contention, the court did not abuse its discretion in denying his request to proceed pro se. Defendant's

7

> request to represent himself was not clear and unequivocal.
> Rather, his request was made in the alternative to his frequent and
> unsupported requests for substitution of assigned counsel. Thus
> the court did not abuse its discretion in denying those requests.

*Larkins*, 128 A.D.3d at 1441.

### E. The Petition, Response, Report-Recommendation and Objection

On March 27, 2017, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 alleging, *inter alia*, that the court's refusal to permit him to proceed pro se violated his rights under the Sixth Amendment. (Pet. at 5, 16–17).

In its response, the State of New York argues that the Appellate Division's factual determination that Petitioner failed to make an unequivocal request to proceed pro se is entitled to a presumption of correctness. (Dkt. No. 8-1, Response Memorandum (Resp. Mem.) at 11). The State notes that prior to September 19, 2011, Petitioner consistently asserted a right to effective assistance of counsel. (*Id*. at 12–14). The State acknowledges that Petitioner's invocation on September 19, 2011 was "unambiguous," but argues that this does not mean it was "unequivocal," and that the record is "not sufficiently clear and convincing to overturn the state court's factual determination." (*Id*. at 15 n. 2). The State also argues that, "even assuming arguendo" that Petitioner unequivocally invoked his right to self-representation on September 19, 2011, the invocation, seven days before trial, was untimely. (*Id*. at 15).

Magistrate Judge Baxter concluded that the Appellate Division's determination was not contrary to, and did not involve an unreasonable application of clearly established Supreme Court law. (Dkt. No. 15, at 16). Magistrate Judge Baxter noted that Petitioner had informed the court that he had "no other alternative but to proceed pro se," because otherwise he would be coming to trial with counsel who is "blind, deaf and dumb," and that Petitioner had, in an earlier request for replacement counsel, informed the trial court that he needed the assistance of an

8

attorney because Petitioner "lacked the legal expertise to go to trial pro se." (*Id*. at 14–15).
Magistrate Judge Baxter concluded that the other claims should be also dismissed because the Appellate Division's rejection of the claims was not contrary to the clearly established Supreme Court precedent. (*Id*. at 16–21).

Petitioner objected to the Report-Recommendation arguing, *inter alia*, that his request to proceed pro se was unequivocal, that he never wavered in the request, and that he had an absolute right to proceed pro se. (Dkt. No. 16, at 3–4).

## III. STANDARD OF REVIEW

### A. Review of Report-Recommendation

This Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.* In light of Petitioner's objection, the Court has reviewed his Sixth Amendment claim de novo.[6]

### B. Review of State-Court Decisions Under 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[6] The Court has reviewed his other objections to the Report-Recommendation *de novo,* and the remainder of the Report-Recommendation for clear error and found no error, for the reasons set forth in the Report-Recommendation.

With respect to factual disputes, a state court's "determination of a factual issue" is "presumed to be correct," and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[7] A state-court factual determination is not unreasonable merely because the reviewing court "would have reached a different result in the first instance." *Brumfield v. Cain*, __ U.S. __, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Nor is it enough if "'reasonable minds reviewing the record might disagree' as to the relevant finding." *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (citation omitted). "Nevertheless, the state court's finding might represent an 'unreasonable determination of the facts' where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding." *Id.* (citation omitted). A factual determination may be unreasonable if it "cannot reasonably be reconciled with the trial transcript." *Jones v. Murphy*, 694 F.3d 225, 235 (2d Cir. 2012).

## IV. DISCUSSION

A criminal defendant has a Sixth Amendment right to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 819-21 (1975).[8] "[B]ecause self-representation relinquishes . . . many of the traditional benefits associated with the right to counsel, the right to self-representation does not attach unless it is asserted clearly and unequivocally." *United States v. Barnes*, 693 F.3d 261, 271 (2d Cir. 2012) (citations and internal quotations omitted). In order to represent himself an accused must "'knowingly and intelligently' forgo" the right to counsel.

---

[7] "The Supreme Court has yet to explain" how §§ 2254(d)(2) and 2254(e)(1) interact, "specifically whether 2254(e)(1) applies in every case in which a petitioner brings a challenge under 2254(d)(2)." *Cardoza v. Rock*, 731 F.3d 169, 177 n.5 (2d Cir. 2013); *see Brumfield v. Cain*, __ U.S. __, 135 S. Ct. 2269, 2282 (2015) ("We have not 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1),' and we need not do so here") (citation omitted). The Court need not address this issue because, as set forth below, Petitioner is entitled to habeas relief even if both provisions apply.

[8] The New York State constitution also provides an accused with the right of self-representation. N.Y. Const., art. I, § 6; *People v. Rosen*, 81 N.Y.2d 237, 243 (1993).

10

*Faretta*, 422 U.S. at 835. A defendant who seeks to proceed pro se should be made "aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.*

Since a federal habeas court reviews the "last reasoned decision" rendered by the state court, the relevant state court decision here is the Fourth Department's memorandum affirming the judgment of conviction. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *see also*, *e.g.*, *Wright v. Griffin*, 14-cv-7559, 2017 WL 5514180, at *3 n.3, 2017 U.S. Dist. LEXIS 190187, at *9 n.3 (E.D.N.Y. Nov. 16, 2017) ("Because the Court of Appeals denied leave to appeal, this Court must look back to the last reasoned decision, which in this case is the Appellate Division's ruling, on direct appeal, affirming petitioner's judgement of conviction.") (internal quotation marks omitted); *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) ("Here, we review the state appellate court's rejection of [the petitioner's] claim that the trial court violated his right to self-representation when it denied his *Faretta* motion at the February 7, 2000 hearing.").

As a preliminary matter, the Court rejects the State's argument that the Petition should be denied because the request, made seven days before trial, was untimely. The State notes that there is no clearly established Supreme Court law on timeliness. The State, however, never raised the timeliness issue on appeal, SR 210–212, and the question of timeliness was not addressed by the state courts. The question of timeliness was not therefore resolved "on the merits," and no AEDPA deference owed on the issue. *Golb v. Att'y Gen. of N.Y.*, 870 F.3d 89, 93 (2d Cir. 2017); 28 U.S.C. §2254(d). In fact, under both Second Circuit and New York law the request was timely because it was made prior to trial. *See*, *e.g.*, *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994) ("The right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of the trial." (quoting *U.S. ex rel. Maldonado v. Denno*,

11

348 F.2d 12, 15 (2d Cir. 1965))); *Matter of Kathleen K.*, 17 N.Y.3d 380, 386 (2011) (noting that "timeliness is not at issue because [the request to proceed pro se] was made prior to trial").

The Court has reviewed the Appellate Division's factual determination that Petitioner's request was not unequivocal in light of the state court record. *See*, *e.g.*, *Mullan v. Arnold*, No. 3:15-CV-2032, 2017 WL 1407717, at *8, 2017 U.S. Dist. LEXIS 60670, at *24(N.D. Cal. Apr. 20, 2017) ("A state court's finding that a defendant's request to represent himself was equivocal is considered a factual determination under 28 U.S.C. § 2254(d)(2)."); *Smith v. Warden*, No. 5:12-CV-1771, 2013 WL 5271036, at *12, 2013 U.S. Dist. LEXIS 133032, at *32 (W.D. La. June 12, 2013) ("[T]he record supports the factual determinations made by the state courts that Petitioner made a free and voluntary waiver of his right to counsel and the clear and unequivocal choice to represent himself for the period of time before he allowed his trial counsel to represent him at trial."), *report and recommendation adopted by* 2013 WL 5271036, 2013 U.S. Dist. LEXIS 133032 (W.D. La. Sept. 17, 2013); *see also Batchelor v. Cain*, 682 F.3d 400, 407 (5th Cir. 2012) (finding that "the state court record provides clear and convincing evidence that [the petitioner's] conduct was in no way inconsistent with his formal and unequivocal request to represent himself with the assistance of standby counsel," and thus concluding "the state court's ultimate decision was based on an unreasonable determination that [the petitioner] waived his initial *Faretta* request" (citing 28 U.S.C. § 2254(d)(2), (e)(1))).

In this case, the Petitioner did not make a "passing reference" or an off-the-cuff remark concerning self-representation: he twice asked to proceed pro se. (Dkt. No. 9-1 at 139–140). The record reflects that he did not evince any uncertainty or equivocation regarding his desire to proceed pro se; the trial court understood and responded to that request; the request generated an extended colloquy; and the trial court expressly rejected the Petitioner's request to represent

himself. While a defendant may express a preference for assigned counsel in a way that reflects vacillation or renders a request to proceed pro se equivocal, there is no such ambiguity in this record. Indeed, the State concedes that Petitioner's request was unambiguous. (Dkt. No. 8-1, at 18 n.2). Petitioner began by noting that the trial court had "given me the opportunity to proceed pro se;" and that because the court denied his request for new assigned counsel, and Petitioner did not want to proceed with his current counsel, Petitioner had "no other alternative but to proceed pro se." (*Id*. at 139). Petitioner then told the court "I would like to proceed pro se since you neglected to offer me different counsel." (*Id*. at 139). The trial court reaffirmed that it was "not going to give you a new attorney." (*Id*. at 140). The trial court then directly asked Petitioner, "Now you say you want to proceed pro se," and Petitioner unequivocally responded "That is correct, sir." (*Id*.).

The trial court initially responded to the request in accord with *Faretta,* asking questions which appeared designed to ensure that Petitioner's decision to represent himself was knowing and voluntary. The court asked Petitioner about his education, his representation in other criminal cases, and his knowledge of criminal law. (*Id.*, at 141–142).[9] The court then began to inform Petitioner about the dangers and disadvantages of self-representation, also in accord with *Faretta*. (*Id*.). In the face of these admonitions, Petitioner did not express any equivocation. In response to the trial court's question whether Petitioner understood that he would be held to "the same standards as any other lawyer in terms of questions, evidentiary rulings, and all of that," Petitioner responded, "Thank you very much. Yes, sir." (*Id*. at 142). When the trial court

---

[9] The Court notes that Petitioner's "technical legal knowledge" was not, in and of itself, "relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta*, 422 U.S. at 836; *see Freeman v. Pierce*, 878 F.3d 580, 586 (7th Cir. 2017) (noting that trial court's denial of the petitioner's right to proceed pro se based upon his lack of education and abilities was contrary to and an objectively unreasonable application of *Faretta*); *Wilson v. Walker*, 204 F.3d 33, 37–38 (2d Cir. 2000) (noting that "inquiry focused on whether [the petitioner] was able and qualified to defend himself" was not relevant to the determination of whether petitioner was waiving his right knowingly and intelligently).

13

continued its explanation, stating that Petitioner would be held to the same standards even though "you don't know anything about the law, other than the fact that you have got a criminal record, is that correct?" Petitioner responded, "That is very correct, Your Honor." (*Id.*). The trial court then expressly rejected Petitioner's request:

> I'm not going to allow you to represent yourself. Mr. Jeschke is going to represent you. I think you have an absolute right to represent yourself, but I'm not going to—I'm not going to grant you that right. You said yourself you don't know anything about the criminal law. You don't know anything about the evidence. And I think, quite frankly, even though you have a right to represent yourself, you have got—I don't think in my opinion, that based upon what you said here other than, you know, you don't like Mr. Jeschke, I am not going to allow you to represent yourself. Mr. Jeschke is going to be your attorney. You can cooperate with him. And this case is going to move forward.

(*Id.*).

The State has not cited any authority or rationale for its position that the request was "unambiguous," but not unequivocal. (Resp. Mem., at 15 n.2). While the State argues that a trial court must ensure that a defendant "genuinely means what he says," *Wiesner v. Abrams*, 726 F. Supp. 912, 919 (E.D.N.Y. 1989), and that a state court need not interpret a defendant's "fit of pique to be a genuine, serious assertion of his right to self-representation," *Hodge v. Henderson*, 761 F. Supp. 993, 1002 (S.D.N.Y. 1990), there is no suggestion here that the trial court considered Petitioner's request to be anything other than genuine. The State argues that the record "is not sufficiently clear and convincing to overturn the state court's factual determination that petitioner's *irate invocation* was not an unequivocal waiver of counsel." (Resp. Mem., at 15 n.2) (emphasis added). But neither the Appellate Division nor the trial court made any such finding. The trial court responded to the request as a genuine request for self-representation, explicitly considering, and denying the request.

14

The Appellate Division found that the request was not unequivocal because it "was made in the alternative to his frequent and unsupported requests for substitution of assigned counsel." *Larkins*, 128 A.D.3d at 1441. But in the September 19, 2011 colloquy Petitioner made an express and unequivocal request to proceed pro se after the court denied his request for new counsel; his unsuccessful requests for new counsel in the circumstances of this colloquy did not render his unambiguous request to proceed pro se equivocal. In *Faretta*, for example, the defendant also sought to represent himself because he was dissatisfied with his assigned counsel; the defendant told the court that he wanted to represent himself and did not want a public defender because he believed that their office was "very loaded down with . . . a heavy case load." 422 U.S. at 807–08. The defendant in *Faretta* also unsuccessfully moved, three times, for appointment of new counsel. *Id.* at 810 n.5. Noting that while defendants would most often be better served with counsel, the Supreme Court ruled that since it is the defendant who will "bear the personal consequences of a conviction . . . the defendant . . . must be free personally to decide whether in his particular case counsel is to his advantage." 422 U.S. at 834. And because Faretta "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," forcing him "to accept against his will a state-appointed public defender deprived him of his constitutional right to conduct his own defense." *Id.* at 835–836; *see also Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994) ("[W]e have previously held that a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or uses it as a threat to obtain private counsel."); *Johnstone v. Kelly*, 808 F.2d 214, 216 n.2 (2d Cir. 1986) ("A request to proceed pro se is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel.");

*Freeman v. Pierce*, 878 F.3d 580, 588–89 (7th Cir. 2017) (finding state court decision "that dissatisfaction with [counsel] made [the petitioner's] request equivocal was contrary to and an unreasonable application of *Faretta*": the petitioner's "motion and his statements on the record clearly reflect that he no longer wanted to be represented by [his] counsel; *and* that he wanted to proceed pro se).

The cases where courts have found requests to be equivocal are factually distinguishable. *See*, *e.g.*, *Rush v. Lempke*, No. 90-CV-3464, 2011 WL 477807, at *17–18, 2011 U.S. Dist. LEXIS 10101, at *52–54 (E.D.N.Y. Feb. 2, 2011) (finding it "reasonable for the state court to view the passing reference to self-representation," "I will go pro se, if I have to right now," in statement seeking a recess for one court day to await his new attorney, "as simply a figurative expression of frustration or hyperbole by petitioner rather than as an unequivocal attempt to invoke his right to represent himself as an alternative position"), *aff'd* 500 F. App'x 12, 14 (2d Cir. 2012) (finding state court's decision "eminently reasonable" because the petitioner's statement that he would proceed pro se 'if he had to' was not unequivocal but part of a transparent effort to obtain an adjournment and substitution of counsel" and "[a]s soon as it became clear that [the petitioner] intended to proceed pro se irrespective of whether he would be able to obtain new counsel, the trial court granted his application"); *United States v. Abdur-Rahman*, 512 F. App'x 1, 3 (2d Cir. 2013) (interpreting the defendant's letter to the court complaining about inadequate counsel and moving to proceed pro se, in light of his pending unresolved motion for new counsel, to reflect not a desire to represent himself but instead to have the district court appoint new counsel); *LaValle v. Artus*, 403 F. App'x 607, 609 (2d Cir. 2010) (finding no *Faretta* error, much less unreasonable application, when the petitioner

16

described self-representation as his "last option . . . not that I want because I know nothing about the law," and the trial court had granted his more preferred option—new counsel).

Whether Petitioner must establish that the Appellate Division's decision was "based on an unreasonable determination of the facts" under § 2254(d)(2) or the arguably more deferential standard in § 2254(e)(1) — requiring that factual determinations be rebutted by clear and convincing evidence —also applies, the Court finds that the Petitioner is entitled to relief because the transcript of the hearing on September 19, 2011 establishes that Petitioner made an unequivocal request to proceed pro se. *See*, *e.g.*, *Jones v. Murphy*, 694 F.3d 225, 238 n.4 (2d Cir. 2012) (assuming "that 2254(d)(2)'s unreasonableness standard is the proper one for review" of state court's findings regarding the voluntariness of the defendant's departure from the courtroom, but noting that transcripts, which did not support the state court's conclusions, were "clear and convincing evidence" under 2254(e)(1), even if that standard applied).

On de novo review, the Court therefore concludes that the petition should be granted. *See*, *e.g.*, *Williams v. Bartlett*, 44 F.3d 95, 99–102 (2d Cir. 1994) (finding that record did not support the conclusion that the petitioner's request to proceed pro se was equivocal when the petitioner "on more than one occasion . . . clearly and unambiguously asserted his desire to represent himself"); *Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir. 1986) (affirming district court's determination that state trial court violated the petitioner's right to proceed pro se, noting that "though the record indicates that [the petitioner] preferred to have new counsel appointed, it also indicates that [the petitioner] steadfastly sought to represent himself despite numerous warnings from [the trial court] of the risks of forgoing counsel," and therefore finding that the petitioner's "persistent requests to represent himself satisfied *Faretta's* requirement of a knowing, voluntary, and unequivocal waiver of the right to appointed counsel"); *cf. Hacker v.*

17

*Herbert*, 825 F. Supp. 1143, 1147–48 (N.D.N.Y. 1993) (granting petition for writ of habeas corpus where state court finding that petitioner's request was equivocal was "not fairly supported by the record" when the petitioner twice told the trial court that he wanted to represent himself).

A violation of a defendant's Sixth Amendment right to proceed pro se is not subject to harmless-error review. *McCoy v. Louisiana*, __ U.S. __, 138 S.Ct. 1500, 1511 (2018). Instead, it "requires automatic reversal of a criminal conviction." *Wilson v. Walker*, 204 F.3d 33, 36 (2d Cir. 2000).

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 15) is **REJECTED**; and it is further

**ORDERED** that the petition (Dkt. No. 1) is **GRANTED;** and it is further

**ORDERED** that the Petitioner be released unless the State provides him with a new trial within sixty days; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 12, 2018

Brenda K. Sannes
U.S. District Judge